## COURT OF APPEALS.
### March 29, 1910.

## THE PEOPLE v. ANTONIO FORNARO.

(198 N. Y. 53.)

MURDER—ALIBI—CONFESSIONS.

> After defendant had made three distinct confessions that he killed the deceased, he testified on trial of indictment for murder that he. could not speak English and denied that he had confessed, and denied that he was in T. on the night of the homicide. *Held*, that the record disclosed no reversible error, in view of the fact that defendant had repeatedly admitted his guilt.

APPEAL from a judgment rendered March 30, 1909, at a Trial Term for the county of Rensselaer, upon a verdict convicting the defendant of the crime of murder in the first degree.

*Thomas F. Powers,* for appellant.

*Abbott H. Jones, District Attorney,* for respondent.

EDWARD T. BARTLETT, J.:

The defendant, an Italian, about thirty years of age, was indicted by the grand jury of Rensselaer county on October 2d, 1908, charging him with committing the crime of murder in the first degree on the 6th day of April, 1908, for killing Agnes. Johnson, a colored woman.

On the 23d day of March, 1909, the trial of the accused began before the late Justice FITTS, he being defended by counsel assigned him. On the 29th day of March, 1909, the jury rendered a verdict convicting the defendant of murder in the first degree. The defense was an alibi.

On the 6th day of April, 1908, the date of the homicide,

Agnes Johnson, the deceased, was in the employ of Mary Fay as a domestic in her house, 1725 Sixth avenue in the city of Troy. Mary Fay, as a witness, admitted on cross-examination that she had previously been convicted of conducting a disorderly house.

The deceased and the defendant for some time prior to the murder lived together in illicit relations. Several witnesses testified that during this period the defendant and the deceased quarreled violently at various times, the former charging her with repeated acts of cohabitation with other men, and particularly in a house of ill-repute conducted by a Mrs. Green.

It was proved that the defendant made various threats to the effect that he would take the life of Agnes Johnson— "finish her"—"cut her throat from ear to ear."

Mary Fay testified that on the night of the homicide Agnes Johnson left her house at about seven o'clock, and that she did not see her again until between twelve and one o'clock that night, when she was lying dead in the rear of her premises.

It was proved that the deceased visited the house of Mrs. Green a little later in the evening and stated that she was afraid to return to the Fay house, as she feared the defendant might waylay her.

It appears by the testimony of several witnesses that the deceased was seen on certain streets in Troy late in the evening of April 6th; also that the defendant was observed lurking behind a telegraph pole near the Fay residence.

Mary Fay testified that the yard in the rear of her house was lower than the main floor and was reached by an outside flight of stairs. This witness further stated that between twelve and one o'clock on the night in question she heard a violent pounding on the door leading to the yard and she responded as soon as possible and saw the form of a woman lying at the foot of the stairs. She descended at once and ascertained that it was

the body of the deceased and that her throat was cut from ear to ear. She immediately summoned a physician and the police. The doctor soon responded and two officers of the police force came a few moments later. When the doctor announced that life was extinct the undertaker and coroner were notified. Death was found to have been practically instantaneous as evidenced by the incised wound in the throat. A thorough examination of the body was made before it was removed to the undertaker's shop.

The defendant left the city of Troy soon after the murder and proceeded first to Springfield, Massachusetts, and subsequently returned to Pittsfield, in that state, where he was arrested on the 11th of April. On the morning after the homicide a razor was found covered with blood in a street near the scene of the murder; also a case in which it was kept. This razor was fully identified by those who had seen it in the possession of the defendant, and later he admitted it was his property and used in the commission of the crime.

The defendant made three distinct confessions in which he admitted that he killed the deceased. The first was made to the police officer residing at Pittsfield, Massachusetts, and who made the arrest on the 11th of April. This officer was an Italian, and the defendant stated to him that he could not speak English. The defendant was returned to Troy in the custody of two members of the police force of that city. On the trip defendant confessed to these officers in English, explicitly stating that he killed Agnes Johnson. Afterwards he confessed in like manner to a member of the Troy police force who was assigned to watch his cell after his return to that city.

On the trial the defendant took the stand and stated that he lived for four years in Springfield, Massachusetts, prior to taking up his residence in Troy. He also stated that he was in Springfield, Massachusetts, on the 6th day of April, 1908, and

was not in Troy on the evening or night of the homicide. He gave his evidence through an interpreter, asserting that he could not speak English. He also denied that he had made any confessions as testified to by the witnesses for the People. His testimony was incredible and against the overwhelming weight of evidence. The only other witnesses sworn for the defense were Joseph and Mary Misisco, who testified that in the early part of April the defendant called at their house in Troy and asked if he could get a room for the night; they were unable to fix the precise date and their testimony is of no value.

The case for the defense rested wholly on the denial of the defendant to the effect that he was not in Troy on the night of the homicide.

The counsel for the defendant failed to point this court to any exception upon which he relied for the reversal of the judgment. A careful examination of the record discloses no reversible error in view of the fact that the defendant had repeatedly admitted his guilt. The lengthy record in this case of three hundred and more pages bears witness to the very conscientious and merciful manner in which the late trial judge guarded the rights of the defendant by allowing his counsel great latitude in the introduction of evidence.

The judgment of conviction should be affirmed.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment of conviction affirmed.

## NOTE ON ALIBI.

(See 7 N. Y. Crim. Rep. 441.)

**CONSIDERED GENERALLY.**

The defense of an alibi is not regarded by the law as a suspicious one. People v. Kelly, 3 N. Y. Crim. 35.

Mere proof that one accused of crime and sought to be extradited was not within the demanding State at the time of the commission of the offense, does not necessarily require or justify his discharge in requisition proceedings or on habeas corpus, since the guilt or innocence of an alleged fugitive from justice cannot be determined therein. People v. Hyatt, 17 N. Y. Crim. 79.

**BURDEN OF PROOF.**

In some States alibi is regarded as a distinct and affirmative defense, and therefore courts in those States put upon the accused the burden of proving same and hold that he must convince the jury that it was impossible for him to have been at the place where the crime was committed at the time it was committed. Bacon v. State, 22 Fla. 51; Klein v. People, 113 Ill. 596; State v. Fenlason, 78 Me. 495; Briceland v. Com., 74 Pa. St. 463.

The weight of authority, however, places upon the State the burden of establishing the presence of defendant at the scene of the crime, as a part of its case, and holds that if, from all the evidence, there exists a reasonable doubt on that fact, he should be acquitted. Waters v. People, 172 Ill. 367; Com. v. Choate, 105 Mass. —; Walters v State, 39 Ohio St. 215; Watson v. Com., 95 Pa. St. 519.

Defendant must satisfy jury by a preponderance of evidence of the truth of the alibi sought to be established. Garrity v. People, 107 Ill. 162.

**EVIDENCE IN SUPPORT OF.**

Relevant facts held to be distance between scene of crime and prisoner's alleged whereabouts at time of commission; time of crime as compared with time of alibi. Klein v. People, 113 Ill. 596.

That accused could not have left his house at time of commission of crime without arousing the inmates thereof held admissible. State v. Delaney, 92 Iowa, 467.

Proof that defendant was at or about the time of the commission of the crime so drunk as to render it highly improbable that he could have been at the place of its commission held admissible to prove alibi. Ingalls v. State, 48 Wis. 647.

Accused may testify that he conversed with persons at place where he claims to have been, and may outline conversation, but may not give details. State v. Bedard, 65 Vt. 278.

### EVIDENCE IN REBUTTAL OF.

Evidence that accused was found hiding from arrest not admissible to disprove alibi. People v. Lee Chuck, 78 Cal. 317.

Witness may testify in rebuttal that he saw defendant near place of crime. State v. Maher, 74 Iowa, 77.

Hearsay evidence that defendant was seen near place where crime was committed not admissible in rebuttal. Com. v. Ricker, 131 Mass. 581.

### CHARGE TO JURY.

Not error to charge that evidence of alibi should be considered with care. People v. Lee Gam, 69 Cal. 552.

Error to charge in language tending to disparage an alibi as a defense or to cast suspicion on the evidence tending to establish it. People v. Lattimore, 86 Cal. 403.

Where questions of personal identity and alibi are involved in one defense they may be charged on together. Dale v. State, 88 Ga. 552.

Not error to warn jury that evidence of alibi should be considered with caution. People v. Tice, 115 Mich. 219.

Erroneous to charge that alibi must so cover whole transaction as to render it impossible that defendant committed crime. Snell v. State, 50 Ind. 516.

But this held proper where jury further charged that they are to give defendant benefit of any reasonable doubt arising from the evidence. Briceland v. Com., 74 Pa. St. 463.

Charge of court in regard to alibi considered, and held proper. People v. Stone, 7 N. Y. Crim. 430.

Proper to charge that attempt to introduce alibi by false or fabricated evidence constitutes a circuumstance against the accused. Com. v. McMahon, 145 Pa. St. 413.

25

Where defense is alibi, a refusal to instruct specially on law of alibi is error.   State v. Powers, 72 Vt. 168.

### NEW TRIAL.

Where defendant, convicted of highway robbery upon the evidence of complainant, who positively identified him at the time, held that a motion for a new trial, based upon affidavits made nine months after conviction, tending to establish an alibi, of which no suggestion was made at the trial, and when the complainant had gone beyond the jurisdiction of the court, was properly denied.   People v. Cameron, 18 N. Y. Crim. 44.